UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BRENDA A. DOUCET                           DOCKET NO. 6:10-cv-0765

VERSUS                                     JUDGE MELANÇON

MICHAEL J. ASTRUE,                         MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL
SECURITY

## REPORT  AND  RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED and this

matter DISMISSED WITH PREJUDICE.

### BACKGROUND AND THE COMMISSIONER'S FINDINGS

On June 19, 2007, Ms. Doucet filed an application for Supplemental Security

Income benefits and any other applicable benefits available under Title XVI of the

Social Security Act.[1]  She was born on May 30, 1978,[2] and he is currently thirty-three

years of age.  Her application for benefits alleges a disability onset date of December

---

[1]        Rec. Doc. 17-6 at 2.

[2]        Rec. Doc. 17-32 at 26; Rec. Doc. 17-6 at 2.

16, 2006,[3] which allegedly corresponds to the last date she worked.[4]  In a disability report that appears to be contemporaneous with her application, she identified the illness, injury, or condition that limits her ability to work as carpal tunnel syndrome.[5] More particularly, she stated:  "I am unable to grasp or hold objects due to pain and swelling of my hands.  I have numbness which limits my lifting or carrying things."[6] At that time, however, she was not seeing a doctor for her alleged condition and had not been treated for this condition within the prior two years.[7]

On August 1, 2007, shortly after Ms. Doucet's application was filed, she was evaluated by Dr. Samuel J. Stagg, Jr.[8]  Dr. Stagg found that she had scarring on both wrists from carpal tunnel release surgery allegedly performed in 2003.  She was complaining of pain, numbness, and swelling in her hands.  But Dr. Stagg found that she had no apparent muscle weakness or atrophy.  Her grip, dexterity, and grasping were normal.  On a scale of one to five, her grip was a five in both hands.  She had

---

[3]     Rec. Doc. 17-6 at 2.

[4]     Rec. Doc. 17-7 at 7.

[5]     Rec. Doc. 17-7 at 7.

[6]     Rec. Doc. 17-7 at 7.

[7]     Rec. Doc. 17-7 at 11.

[8]     Dr. Stagg's report is found in the record at Rec. Doc. 17-8 at 2-3.

a normal range of motion in her hands and arms.  There was no clubbing or cyanosis of her fingers, and vibratory and fine touch sensation were both normal.

Upon initial determination, the Commissioner denied Ms. Doucet's application on August 3, 2007.[9]  Ms. Doucet requested a hearing,[10] which was held on February 17, 2009 before Administrative Law Judge ("ALJ") Ruth Markart.[11]

At the time of the hearing, Ms. Doucet was 30 years old.  She had not worked for approximately two-and-a-half years,[12] and she was caring for two young children.[13]  When asked why she stopped working when she did, she provided two reasons.  "Well, my car broke, and my hands just started getting numb and hurting."[14] She testified at the hearing that she is left-handed.[15]  When specifically asked to identify the medical problems or conditions that limit her ability to work, she mentioned only carpal tunnel syndrome and a problem with her right knee.[16]

_____

[9]      Rec. Doc. 17-5 at 2.

[10]     Rec. Doc. 17-5 at 10.

[11]     The transcript of the hearing is contained in the record at Rec. Doc. 17-3 at 23-63.

[12]     Rec. Doc. 17-3 at 31.

[13]     Rec. Doc. 17-3 at 27.

[14]     Rec. Doc. 17-3 at 31.

[15]     Rec. Doc. 17-3 at 27.

[16]     Rec. Doc. 17-3 at 33.

Ms. Doucet testified that she had carpal tunnel surgery on both wrists in 2002[17] as well as a carpal tunnel release on her right wrist in April 2008 and on the left wrist in September or October 2008.[18]  The record contains documentation of the April 2008 surgery on her right wrist but no documentation concerning the alleged surgeries of 2002 or the alleged surgery on her left wrist in the fall of 2008.  The record indicates that Ms. Doucet was scheduled for another surgery on her right wrist in September 2009[19] but the record contains no documents indicating whether that surgery was actually performed.

Ms. Doucet stated at the hearing that she went to physical therapy following the April 2008 surgery on her right wrist but the therapy was ineffective because she had continued swelling.[20]  In fact, however, she attended only three of eight scheduled occupational therapy sessions and was discharged for non-compliance with the therapy schedule prescribed by her surgeon.[21]  By the time of the hearing, she had been released from her doctor's care for the carpal tunnel problems.[22]  The record

_____

[17]     Rec. Doc. 17-3 at 46-48.

[18]     Rec. Doc. 17-3 at 35.

[19]     Rec. Doc. 17-9 at 126, 130-133.

[20]     Rec. Doc. 17-3 at 35-36.

[21]     Rec. Doc. 17-8 at 165.

[22]     Rec. Doc. 17-3 at 36.

contains no documentation of follow-up care and no reports from her surgeon or other treating physician regarding her post-operative condition or prognosis.  Ms. Doucet complained that her pain remained an eight on a scale of one to ten at the time of the hearing, but she also testified that she was not receiving any treatment for pain.[23]  She testified that she drops heavy things if she holds them for about five minutes.[24]  However, she also testified that she can pick up small objects[25] and can button, snap, zip, concentrate, follow instructions, and interact with people.[26]  She drives a car with a standard transmission,[27] and does her own grocery shopping although she claims to need assistance carrying heavy objects.[28]  At the hearing, she was wearing a brace on her right, non-dominant arm and complained that it swells, hurts, and goes numb.[29]

Ms. Doucet further testified that she injured her knee in June 2008, and had surgery on the knee thereafter.[30]  Documentation of the surgery is contained in the

---

[23]     Rec. Doc. 17-3 at 37.

[24]     Rec. Doc. 17-3 at 37.

[25]     Rec. Doc. 17-3 at 45.

[26]     Rec. Doc. 17-3 at 46.

[27]     Rec. Doc. 17-3 at 30.

[28]     Rec. Doc. 17-3 at 37-38.

[29]     Rec. Doc. 17-3 at 49.

[30]     Rec. Doc. 17-3 at 34.

record,[31] but there is no documentation of any follow-up visits with the surgeon or any other physician and no reports concerning the success of the surgery, the need for follow-up care, or the long-term prognosis for her injury.  At the hearing, Ms. Doucet testified that she can walk only two or three steps without having to sit down and can sit down only for about five or ten minutes without having to stand up.[32]  She also testified that the knee continues to swell.[33]  However, there is no indication that Ms. Doucet was being treated for the knee problem at the time of the hearing.

Ms. Doucet also testified that she was seeing a doctor for a back problem that she described as "three bulged discs or whatever it's called."[34]  She stated that she was getting a shot once a month for that condition.[35]  The record contains no medical records documenting a back injury.  There is one reference to a complaint of low back pain lasting for approximately one week in a record from an emergency room visit of April 13, 2008, but Ms. Doucet's primary complaint at that time was related to a

---

[31]     Rec. Doc. 17-3 at 30.

[32]     Rec. Doc. 17-3 at 44.

[33]     Rec. Doc. 17-3 at 52.

[34]     Rec. Doc. 17-3 at 43.

[35]     Rec Doc. 17-3 at 43.

painful tooth.[36]  The record is, therefore, devoid of objective medical evidence of a back condition that might be contributing to Ms. Doucet's alleged disability.

Despite her complaints, Ms. Doucet testified at the hearing that she is able to do all of her household chores[37] and to attend to all of her personal needs.[38]

Following the hearing, the ALJ rendered an unfavorable decision on April 21, 2009.[39]  Ms. Doucet requested review of that decision, and on March 5, 2010, the Appellate Council denied her request.[40]   Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[41]

Ms. Doucet now seeks judicial review of the Commissioner's decision, arguing that she has been disabled since December 16, 2006 because of carpel tunnel syndrome and a right knee injury.

---

[36]     Rec. Doc. 17-8 at 7.

[37]     Rec. Doc. 17-3 at 39.

[38]     Rec. Doc. 17-3 at 40.

[39]     Rec. Doc. 17-3 at 16-22.

[40]     Rec. Doc. 17-3 at 2-4.

[41]     42 U.S.C. § 405(g).

## ASSIGNMENT OF ERRORS

Ms. Doucet claims that the ALJ "did not apply the correct legal standards in determining the ultimate issues."[42] Her position seems to be that the Commissioner's ruling is erroneous because it did not conclude that she is disabled.  She argues that the Commissioner should have found that her wrist and knee surgeries render her disabled.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[43]  If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed.[44]  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.[45]  A finding

---

[42]    Rec. Doc. 19 at 4.

[43]    42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001);

[44]    *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[45]    *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[46]   Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[47] In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[48]

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[49]   Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[46]     *Boyd v. Apfel,* 239 F.3d at 704.

[47]     *Singletary v. Bowen*, 798 F.2d at 823.

[48]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[49]     *Alfred v. Barnhart*, 181 Fed. App'x at 450; *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

12 months."[50]   Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[51]

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.   An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.   An individual who does not have a "severe impairment" will not be found to be disabled.

3.   An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.   If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.   If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual

---

[50]      42 U.S.C. § 423(d)(1)(A).

[51]      20 C.F.R. § 404.1572(a)-(b).

functional capacity must be considered to determine if any other work can be performed.[52]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[53] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[54] The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[55]

The claimant bears the burden of proof on the first four steps.[56] At the fifth step, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[57] This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert

---

[52] *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f). See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[53] 20 C.F.R. § 404.1520(a)(4).

[54] 20 C.F.R. § 404.1545(a)(1).

[55] 20 C.F.R. § 404.1520(e).

[56] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[57] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

-11-

vocational testimony or other similar evidence.[58]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[59]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[60]

In this case, the Commissioner found, at step one, that Ms. Doucet has not engaged in substantial gainful activity since December 16, 2006.[61]  This finding is supported by evidence in the record.[62]

At step two, the Commissioner found that Ms. Doucet has the following severe impairments:  carpal tunnel syndrome and status past-partial meniscectomy of the right knee.  This is also supported by the evidence in the record.  Ms. Doucet testified that carpal tunnel syndrome affects both her dominant left hand and her non-dominant right hand.  When she was examined by Dr. Stagg, he observed scars on both of her wrists from carpal tunnel release surgery.[63]  No medical records were submitted that

---

[58]     *Fraga v. Bowen*, 810 F.2d at 1304.

[59]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[60]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[61]     Rec. Doc. 17-3 at 18.

[62]     Ms. Doucet's work and earnings history is found in the record at Rec. Doc. 17-6 at 11-17.

[63]     Rec Doc. 17-8 at 2.

confirm these surgeries or discuss Ms. Doucet's follow-up care or post-operative condition. Her medical records do show, however, that she underwent a carpal tunnel release surgery on her right wrist on April 16, 2008[64] but there is no evidence of any follow-up visits to her physician after the surgery. The record also shows that Ms. Doucet was scheduled for a third right carpal tunnel release on September 23, 2009.[65] But there are no records confirming whether this surgery was actually performed. There are no medical records establishing that Ms. Doucet underwent a carpal tunnel release surgery on her left wrist in 2008, as she stated in her hearing testimony, nor are there any medical records for doctors' visits related to any such surgery. Ms. Doucet's medical records also show that, on April 23, 2008, she was diagnosed with a partial tear in the anterior cruciate ligament, and a tear in the posterior horn of the medial meniscus.[66] On June 25, 2008, she underwent arthroscopic surgery to repair her right knee.[67] There is substantial evidence in the record supporting the ALJ's finding that Ms. Doucet's carpal tunnel syndrome and surgically repaired right knee constitute severe impairments.

---

[64]     Rec. Doc. 17-8 at 49.

[65]     Rec. Doc. 17-9 at 126, 130-133.

[66]     Rec. Doc. 17-8 at 180.

[67]     Rec. Doc. 17-9 at 30.

At step three of the required analysis, the ALJ found that Ms. Doucet does not have a listed impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Ms. Doucet has not suggested that any one of her alleged impairments satisfies any particular listing nor has she argued that a combination of her alleged impairments satisfies any particular listing.  Since Ms. Doucet has the burden of proving that her impairments meet or equal the listings, she must also carry the burden of demonstrating which listing she meets or equals.

Listings criteria are demanding and stringent,[68] and the burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a Step Three impairment determination.[69]  When a claimant fails to sustain that burden, a reviewing court must conclude that substantial evidence supports the ALJ's finding that listings-level impairments are not present.[70]

If an impairment does not meet a listing, it may, nevertheless, entitle the claimant to a finding that he is disabled if his impairment or combination of

---

[68]     *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

[69]     *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

[70]     *Selders v. Sullivan*, 914 F.2d at 619-20.

impairments is medically equivalent in severity to the listing.  If the claimant argues for medical equivalency, the standard is similarly demanding, and the claimant may not establish listings-level severity through subjective testimony.   Rather, the claimant must point to objective medical findings that support each of the criteria for the equivalent impairment determination.[71]

In this case, Ms. Doucet has not satisfied her burden.  She has not identified a listing that her impairments allegedly meet or equal nor has she provided the necessary medical signs and laboratory findings to support a finding that her impairments meet or equal a listing.  Since she has not carried that burden, there is no basis for concluding that the Commissioner's finding at step three is erroneous.

Before going from step three to step four, the Commissioner found that Ms. Doucet retains the residual functional capacity to perform light work with certain restrictions.[72]  This assessment was based on Ms. Doucet's alleged symptoms and the extent to which her symptoms are consistent with the objective medical evidence and other evidence in the record.  Aside from her hearing testimony as to what she can and cannot do, Ms. Doucet has offered no evidence to support a conclusion that her

---

[71]     *Selders v. Sullivan*, 914 F.2d at 619.

[72]     Rec. Doc. 17-3 at 19.

actual residual functional capacity is anything other than that found by the Commissioner.

The ALJ followed the appropriate two-step process[73] in first determining that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Ms. Doucet's symptoms and then evaluating the intensity, persistence, and limiting effects of her symptoms to determine the extent to which her impairments limit her ability to do basis work activities.  Following this procedure, the ALJ found that Ms. Doucet's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment.  This finding is supported by the evidence in the record.

The medical records indicate that Ms. Doucet was diagnosed with carpal tunnel syndrome of her right wrist.  There is no similar diagnosis for her left (dominant) wrist.  She underwent surgery to repair the right wrist and was prescribed a course of occupational therapy as follow-up to the surgery.  She was discharged from therapy, however, because she was non-compliant with the prescribed therapy regime.[74]  There

---

[73]     See, e.g., *Salgado v. Astrue*, 271 Fed. App'x 456, 458 (5th Cir. 2008).

[74]     Rec. Doc. 17-8 at 165.

are no medical records indicating whether she followed-up with her physician following the surgery or has had any post-surgery appointments of any kind.

It is true that pain can constitute a disabling impairment,[75] but pain constitutes a disabling condition only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[76]  Furthermore, subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence.[77]  While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.[78] The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence.[79]  The absence of objective factors can justify the conclusion that a witness lacks credibility.[80]

---

[75]     *Falco v. Shalala*, 27 F.3d at 163; *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

[76]     *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19.

[77]     *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[78]     *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[79]     *Harper v. Sullivan*, 887 F.2d at 96.

[80]     *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (*per curiam*).

Shortly after Ms. Doucet applied for benefits, she was evaluated by Dr. Stagg. Although she reported having continued pain and other symptoms despite having had carpal tunnel release surgery on both wrists four years earlier, Dr. Stagg found no objective corroboration of her subjective complaints.  She had no apparent muscle weakness or atrophy; her grip, dexterity, and grasping were normal; her grip strength was at the top of the range bilaterally; she had a normal range of motion in her hands and arms; her vibratory and fine touch sensation were normal.[81]   Although Ms. Doucet alleges a disability onset date of December 2006, the examination by Dr. Stagg in 2007 found no limitations.  Furthermore, the record contains no reports from any of Ms. Doucet's treating physicians corroborating her subjective complaints or confirming her alleged limitations.   Both the applicable regulations and the jurisprudence require objective medical evidence to corroborate, at least in part, a claimant's subjective complaints.[82]   "[S]ubjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding."[83]   When a claimant does not provide sufficient evidence, the ALJ

---

[81]     Rec. Doc. 17-8 at 2-3.

[82]     *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 416.912(b).

[83]     *Salgado v. Astrue*, 271 Fed. App'x at 460, citing SSR 96-7p and 20 C.F.R. § 404.1529.

must make a decision based on the available evidence.[84]  Furthermore, the lack of evidence of restrictions imposed by a physician upon a claimant's activities can be interpreted only in favor of a finding of not disabled.[85]  The paucity of medical evidence presented in this case undermines Ms. Doucet's subjective claims.  The ALJ found that the evidence does not support Ms. Doucet's testimony at the hearing, in which she alleged that she has many limitations.  That conclusion is supported by the evidence in the record, and the ALJ did not err in finding that Ms. Doucet's contrary testimony lacks credibility.

At step four, the ALJ found that Ms. Doucet is unable to perform past relevant work.  In the past, Ms. Doucet worked as a "booth head" at a casino, which is similar to being a cashier supervisor.  The vocational expert identified this as a light, skilled job.[86]  Based on the residual functional capacity found by the ALJ, the vocational expert testified that Ms. Doucet is no longer capable of performing that work.[87]  Therefore, the ALJ's finding is supported by the evidence in the record.

---

[84]     *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).

[85]     See, e.g., *Hollis v. Bowen*, 837 F.2d at 1387.

[86]     Rec. Doc. 17-3 at 55.

[87]     Rec. Doc. 17-3 at 57.

At step five, again based upon the testimony of the vocational expert, the ALJ found that there are jobs that exist in the national economy that Ms. Doucet can perform.  In particular, the ALJ found that she could work as an information clerk in a position that qualifies as sedentary work.[88]  Therefore, the ALJ found that Ms. Doucet is not disabled.  This finding is supported by substantial evidence in the record, in the form of the residual functional capacity evaluation discussed above and in the form of the testimony of the vocational expert at the hearing.  At this point, the burden shifts to the claimant, Ms. Doucet, to prove that her impairments prevent her from working as a sedentary level information clerk.  The Fifth Circuit has held that a "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."[89]  Ms. Doucet has undergone surgery for both of her allegedly disabling conditions, the carpal tunnel syndrome and the knee injury.  She must bear the burden of proving that, despite undergoing the documented surgical procedures, she remains unable to work.  This she has not done.

"Four factors constitute substantial evidence:  (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of

---

[88]     Rec. Doc. 17-3 at 21.

[89]     *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).  See also *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980) (conditions controlled or controllable by treatment are not disabling).

pain and disability; and (4) the plaintiff's age, education, and work history."[90]  In this case, the claimant relied heavily on the last two factors and presented very little in the way of diagnoses, objective medical facts, or clinical findings.  The only objective medical facts concerning Ms. Doucet's alleged carpal tunnel syndrome are those set forth in Dr. Stagg's report.  The ALJ found that Ms. Doucet's subjective complaints were inconsistent with the facts set forth in that report.  This court has no basis on which to disagree with the ALJ's conclusion.  In a case in which the ALJ found that the objective medical evidence did not support the claimant's allegations concerning the intensity, duration, and limiting effects of his symptoms, as the ALJ did in this one, the Fifth Circuit cautioned that a claimant's "subjective accounts of his illness cannot outweigh the countervailing facts."[91]  In this case, the ALJ evaluated Ms. Doucet's credibility under appropriate legal standards, and her conclusion is sufficiently supported.  In sum, Ms. Doucet simply did not prove that she is disabled.

Furthermore, Ms. Doucet has presented no other evidence tending to show that either the condition of her right knee or her carpal tunnel syndrome prevents her from working as a sedentary information clerk.  Again, she has not proven that she is disabled.

---

[90]      *Brown v. Astrue*, 344 Fed. App'x 16, 19 (5th Cir. 2009), citing *Fraga v. Bowen*, 810 F.2d at 1302, n. 4.

[91]      *Brown v. Astrue*, 344 Fed. App'x at 21.

In summary, the undersigned finds that the Commissioner followed and applied the analysis prescribed by the Social Security regulations for determining whether Ms. Doucet is disabled.  Accordingly, the Commissioner's decision comports with the relevant legal standards.  The undersigned further finds that the Commissioner's decision is supported by substantial evidence.  The determination of a disability is a legal conclusion within the Commissioner's scope of authority.[92]   In this case, the Commissioner did not err in finding that Ms. Doucet is not disabled.

### CONCLUSION AND RECOMMENDATION

The undersigned fully reviewed the entire record on this matter, finds that the Commissioner did not err as a matter of law in reaching the final decision in this matter, finds that the Commissioner applied the proper legal standards in reaching the decision, and finds that the decision was supported by substantial evidence. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the Commissioner's decision be affirmed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of

---

[92]     *Frank v. Barnhard*, 326 F.3d 618, 620 (5th Cir. 2003).

this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 19th day of September, 2011.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)